**SULAIMAN LAW GROUP, LTD.**
Alejandro E. Figueroa (State Bar No. 332132)
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181 x 120
Facsimile: (630) 575-8188
Email: alejandrof@sulaimanlaw.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIL EBRAHIM and HANAA SHARMOUKH,<br><br>        Plaintiffs,<br><br>v.<br><br>ELITE FINANCIAL SERVICES, INC.,<br><br>        Defendant. | Case No. 2:22-cv-00890<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. §1679 ET SEQ.;**<br><br>**2. VIOLATION OF THE CALIFORNIA CREDIT SERVICES ACT OF 1984, CAL. CIV. CODE §1789.10 ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Now comes EMIL EBRAHIM ("Emil") and HANAA SHARMOUKH ("Hanaa") (collectively "Plaintiffs"), by and through the undersigned, complaining as to the conduct of ELITE FINANCIAL SERVICES, INC. ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.* and the California

1

Credit Services Organizations Act ("CCSOA") under Cal. Civ. Code § 1789.10 *et seq.* for Defendant's unlawful conduct.

## JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Central District of California and a substantial portion of the events or omissions giving rise to the claims occurred within the Central District of California.

## PARTIES

4. Plaintiffs are consumers over 18 years of age residing in Los Angeles County, California, which is within the Central District of California.

5. Defendant is a credit repair organization that claims to be "committed to helping people live debt free nationwide" through their "debt relief program."[1] Defendant is a corporation organized under the laws of the state of Massachusetts whose principal place of business is located at 100 Cummings Center, Suite 141A, Beverly, Massachusetts.

---

[1] https://livedebtfree.net/

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

7. Joinder of Plaintiffs' claims against Defendant is proper under Fed. R. Civ. P. 20(a)(1) as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and common questions of law or fact will arise.

## FACTS SUPPORTING CAUSES OF ACTION

8. In approximately the end of 2018, Plaintiffs were wanting to go about resolving a number of debts which were appearing on their credit reports, and so began searching credit repair and debt relief companies.

9. Plaintiffs then happened upon Defendant.

10. Plaintiffs explained to Defendant the nature of the debts they wanted to enroll, and Defendant advised that they could enroll those debts in its program and would be able to settle those debts for approximately half of what Plaintiffs owed.

11. Plaintiffs were further informed that if they made certain monthly payments over a period of time, Defendant would be able to settle all of the debts they enrolled in the program.

12. Plaintiffs, wanting to resolve their debt issues, subsequently enrolled in Defendant's services and signed a contract for Defendant's provision of credit repair services.

13. However, prior to entering into the contract with Defendant, Defendant failed to provide Plaintiffs with the disclosures required under 15 U.S.C. § 1679(c).

14. Similarly, Defendant's contract deceptively attempts to suggest that it does not provide credit repair services, despite Defendant clearly providing consumers credit repair services.

15. Plaintiffs then began making their monthly payments to Defendant routinely.

16. Plaintiffs' monthly payments totaled approximately $569.58.

17. Throughout their dealings with Plaintiffs, Defendant would frequently enter into settlement agreements with their creditors without informing Plaintiffs of the nature of the settlements.

18. Plaintiffs would frequently request updates, yet Defendant would frequently fail to provide Plaintiffs with any update on the status of their credit repair services.

19. Upon information and belief, Defendant deceptively refused to provide information to Plaintiffs regarding the settlements they were reaching because Defendant was settling such debts for sums greater than Defendant's original representations regarding what would be necessary to settle the various debts.

20. Despite these frustrations, Plaintiffs continued making monthly payments.

21. Plaintiffs further explicitly asked Defendant regarding the nature of a Bank of America ("BofA") debt and Defendant's status regarding settlement.

22. Plaintiffs were informed that the BofA account was being taken care of and was actively being negotiated.

23. On or about December 3, 2019, Defendant informed Plaintiffs that they were in settlements with BofA and other creditors, but that if Plaintiffs agreed to increase their monthly payments by $156 a month for 14 months, Plaintiffs could finish the program early.

24. Plaintiffs did not want to increase their monthly payments to finish early, instead wanting to stick to the agreed upon timeline.

25. Plaintiffs then continued making their monthly payments to Defendant believing that their debts were actively being settled.

26. Then, in approximately July 2021, Plaintiffs received various advertising letters from law firms offering Plaintiffs legal service in connection with a debt collection lawsuit filed against them by BofA in connection with one of the debts Plaintiffs were informed was actively being settled by Defendant.

27. Upon receiving the correspondence, Plaintiffs contacted Defendant for an update or status report on the BofA debt they were now being sued on.

28. Defendant's representative advised that the letters were just advertisements and that the BofA debt was actively being settled.

29. However, the letters were indicative of a very real lawsuit which had been filed against Plaintiffs.

30. Plaintiffs became incensed and distressed that they were being sued on a debt which Defendant repeatedly advised was actively being settled.

31. As a result of Defendant's misrepresentations as to the services it was providing in connection with the BofA account, Plaintiffs were subjected to litigation, and incurred court costs, despite their belief that Defendant was actively paying down the debt through their monthly payments.

32. When Plaintiffs pressed Defendant on how it was possible to be sued when they were actively paying down the debt, Defendant advised that it would need to extend Plaintiffs' payment schedule and increase their monthly payments, and further advised they could do nothing further to assist with the debt collection litigation.

33. Defendant's refusal to assist Plaintiffs with this troublesome represents the deceptive nature of Defendant's representations that it will work with its customers to resolve debts with problematic creditors.

34. Further, upon information and belief, Defendant knowingly provided Plaintiffs a deflated figure representing the total payments necessary to settle enrolled debt so as to compel acceptance of their terms, only to turn around and demand additional sums down the line.

35. Upon further information and belief, Defendant knowingly informs consumers that they can resolve their debts for approximately 50% of what was

owed, despite similarly knowing it would be unable to achieve those represented results, in particular considering the nature of the debts which were enrolled in its program.

36. Upon realizing the nature of Defendant's scheme and the full extent of their misrepresentations, Plaintiffs advised they would be cancelling their contract, and further began exploring their legal options to address to Defendant's conduct.

37. Defendant then deceptively informed Plaintiffs that Defendant could not be sued by Plaintiffs, and that Plaintiffs should just agree to increase their payments and complete the program.

38. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

39. Plaintiffs have suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, incurrence of inappropriate court fees, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

40. Plaintiffs repeat and reallege paragraphs 1 through 39 as though fully set forth herein.

41. Plaintiffs are "consumer[s]" as defined by 15 U.S.C. § 1679a(1) of the CROA.

42. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a. Violations of CROA § 1679b(a)

43. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

44. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiffs. The parties agreed upon a specific amount and length for Plaintiffs' monthly payments, yet Defendant nevertheless requested further sums

from Plaintiffs. Upon information and belief, Defendant's conduct is emblematic of an overarching scheme whereby Defendant provides an initial amount and length of payments based on a 50% reduction in debt balance, despite knowing that unlikelihood with which consumers can actually experience such 50% reduction. Defendant attempts to cloak its foot-in-the-door technique through contractual language; however, Defendant's initial 50% representation is nevertheless designed to deceptively and misleadingly get consumers to agree to utilize Defendant's services, only for Defendant to turn around and demand further sums down the line.

45. Defendant further violate the above portions of the CROA through its deceptive and misleading representations regarding the services it was providing in connection with the BofA account upon which Plaintiffs were eventually sued. Throughout their dealings, Defendant represented that the BofA account was being settled. As such, Plaintiffs were led to believe no direct action on their part was necessary. However, upon being sued by BofA, Plaintiffs realized the deceptive and misleading nature of Defendant's representations regarding the services it was providing in connection with the BofA account. Plaintiffs have suffered significant hardship as a result of Defendant's conduct.

46. Defendant further violated § 1679b(a)(3) when it deceptively informed Plaintiffs that Defendant could not be sued as a result of its conduct. Defendant's conduct is emblematic of the abuses sought to be addressed through the CROA and

corresponding state laws. Defendant made its deceptive and misleading representations to Plaintiffs hoping to convince them that they were without options and should instead agree to Defendant's demands.

47. Additionally, Defendant violated § 1679b(a)(3) when it deceptively suggested to Plaintiffs that it does not provide credit repair services. Debt relief is inherently designed to improve a consumer's credit through the resolution of debts, rendering Defendant's suggestion that it does not provide credit repair services deceptive and misleading.

48. Finally, Defendant violated § 1679b(a)(3) when it deceptively and misleadingly represented that it would assist Plaintiffs with problematic creditors, yet failing to assist Plaintiffs when Plaintiffs were requesting such assistance in connection with BofA.

### b. Violation of CROA § 1679c

49. The CROA, pursuant to 15 U.S.C. § 1679c, provides that a credit repair organization must provide consumers with certain written disclosures underpinning the provision of credit repair services to consumers. Pursuant to § 1679c(b), such written statement must be separate from any written contract or other agreement between a consumer and a credit repair organization.

50. Defendant violated § 1679c by failing to provide Plaintiffs the disclosures and by failing to provide such disclosures to Plaintiffs in a document separate from any contract or other agreement between the parties.

WHEREFORE, Plaintiffs, EMIL EBRAHIM and HANAA SHARMOUKH, respectfully requests that this Honorable Court enter judgment in their favor as follows:

  a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

  b. Awarding Plaintiffs actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

  c. Awarding Plaintiffs punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

  d. Awarding Plaintiffs costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

  e. Awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT II – VIOLATIONS OF THE CALIFORNIA CREDIT SERVICES ORGANIZATION ACT**

51. Plaintiffs restate and realleges paragraphs 1 through 50 as though fully set forth herein.

52. Plaintiffs are "buyer[s]" as defined by Cal. Civ. Code § 1789.12(c).

53. Defendant is a "credit services organization" as defined by Cal. Civ. Code § 1789.12(a).

### a. Violation of CCSOA § 1789.13

54. The CCSOA, pursuant to Cal. Civ. Code § 1789.13, provides a list of prohibited conduct for credit services organizations.

55. Pursuant to § 1789.13(b), a credit services organization cannot "fail to perform the agreed services within six months following the date the buyer signs the contract for those services."

56. Defendant violated § 1789.13(b) by failing to perform its services within 6 months of Plaintiffs signing the contract with Defendant.

57. Pursuant to § 1789.13(g), credit services organization cannot "[m]ake or use untrue or misleading representations in the offer or sale of the services of a credit services organization." Similarly, pursuant to § 1789.13(h), a credit services organization cannot "[e]ngage, directly or indirectly, in an act, practice, or course of business that operates or would operate as a fraud or deception upon a person in connection with the offer or sale of the services of a credit service organization."

58. As outlined above, Defendant violated the above referenced provisions of the CCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

### b. Violations of CCSOA §§ 1789.14-1789.15

59. The CCSOA, pursuant to Cal. Civ. Code § 1789.15, provides the extent of information that must be provided to a buyer by a credit services organization under § 1789.14.

60. Defendant violated these provisions of the CCSOA by failing to provide Plaintiffs such disclosures and similarly failing to provide Plaintiffs a copy of the disclosures.

WHEREFORE, Plaintiffs EMIL EBRAHIM and HANN SHARMOUKH, respectfully requests that this Honorable Court enter judgment in their favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiffs actual damages pursuant to Cal. Civ. Code § 1789.21(a);

c. Awarding Plaintiffs punitive damages pursuant to Cal. Civ. Code § 1789.21(a);

d. Awarding Plaintiffs' costs and reasonable attorney fees, pursuant to Cal. Civ. Code § 1789.21(a); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: February 9, 2022                     Respectfully submitted,

                                                                         /s/Alejandro E. Figueroa
Alejandro E. Figueroa, Esq.
California Bar No. 332132
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181 Ext. 120
alejandrof@sulaimanlaw.com