**GREENSPOON MARDER LLP**
GERMAIN D. LABAT (SBN 203907)
1875 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel: (323) 880-4520
Fax: (954) 771-9264
Email: germain.labat@gmlaw.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

EMIL EBRAHIM AND HANAA SHARMOUKH,

PLAINTIFFS,

V.

ELITE FINANCIAL SERVICES, INC.,

DEFENDANT.

Case No. 2:22-cv-00890

Judge: Dolly M. Gee

**(1) DEFENDANT ELITE FINANCIAL SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; and**
**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Complaint Filed: February 9, 2022

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on _______________ at ______, or as soon thereafter as may be heard, in Courtroom __ of the above-entitled Court, located at _______________________, Defendant Elite Financial Services, Inc. will and hereby does move the Court for an order dismissing this action pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

The grounds for this Motion are that Plaintiff has not stated and cannot state a claim for relief pursuant to either the Credit Repair Organization Act ("CROA"), 15 U.S.C. § 1679 *et seq*. or the California Credit Services Organization Act of 1984 ("CCSOA"), Cal. Civ. Code § 1789.10 *et seq*.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, all pleadings and files in this matter, all matters incorporated by reference into the Complaint and of which the Court may take notice, and upon such other and further argument or evidence as may be presented to the Court at or prior to the hearing on this Motion.

This Motion is made following conference of counsel pursuant to Central District of California Local Rule 7-3, which took place on March 15, 2022. During that conference, the parties discussed the grounds for this Motion, and Plaintiff's counsel indicated that they would oppose the relief requested.

DATED: March 24, 2022

Respectfully submitted,

GREENSPOON MARDER LLP

By: */s/ Germain D. Labat*
German D. Labat

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………..4

I. PRELIMINARY STATEMENT…………………………………….7

II. PLAINTIFF'S ALLEGATIONS…………………………………….7

III. LEGAL STANDARD……………………………………………….10

IV. ARGUMENT………………………………………………………...11

A. Plaintiff's Claims Under the CROA Fail As A Matter of Law Because Elite Financial Neither Provides Credit Repair Services Nor Is A Credit Repair Organization……………………………………11

B. Plaintiff's Claims Pursuant to 15 U.S.C. § 1679b(a)(3) and (4) Should Be Dismissed Because the Complaint Does Not Allege Any Actionable False Statements Regarding the Services of Elite Financial……………………………………………………….15

1. Plaintiff's 15 § 1679b(a)(3) and (4) claims must satisfy Fed. R. Civ. P. 9(b)…………………………………………………15

2. Elite Financial does not make any untrue or misleading statements regarding its services nor does it engage in practices that constitute a fraud or deception……………………………………………15

C. Plaintiff's Claims Under the CCSOA Fail As A Matter of Law Because Elite Financial Neither Provides Credit Repair Services Nor Is A Credit Services Organization…………………………..…18

V. CONCLUSION…………………………………………….………..20

# TABLE OF AUTHORITIES

**Page (s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)……………………………………..…..……..10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ……………………………………..………..10

*Brown v. CMC*,
No. CV 08-4587-VAP (SH), 2010 WL 2674499
(C.D. Cal. May 18, 2010) ……………………………………..…..10

*Conder v. Home Sav. Of Am.*,
No. CV 077051 AG (CTx), 2010 WL 2486765
(C.D. Cal. June 14, 2010) ……………………………………….10

*Conner v. Winslow*,
No. EDCV 07-218 AG (AN), 2009 WL 1549737
(C.D. Cal. June 1, 2009) ……………………………………………10

*In re Experience Info. Solutions, Inc.*,
No. CV-15-01212-PHX-GMS, 2017 WL 3574847
(D. Ariz. Aug. 17, 2017)…………………………………………12

*Jackson v. Telegraph Chrysler Jeep, Inc.*,
No. 07-cv-10489, 2009 WL 928224
(E.D. Mich. Mar. 31, 2009)……………..……………………….12

*Lazar v. Superior Court*,
(1996) 12 Cal. 4th 631……………………..……………………19



49586689v1

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008)……………………….……………….10, 14

*Lopez v. ML # 3*,
607 F. Supp. 2d 1310 (N.D. Fla. 2009)…………………………12

*Moret v. Select Portfolio Servicing*,
No. 08-61996-CIV, 2009 WL 1288062
(S.D. Fla. May 6, 2009)..………………………………,,,,,,,…12, 13

*Nixon v. Alan Vester Auto Grp, Inc.*,
NO. 07-cv-839, 2008 WL 4544369
(M.D.N.C. Oct. 8, 2008)………………………………………..13

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009)……………….……………………..11

*Payton v. Nationwide Debt Direct*,
No. 1:15-cv-742, 2016 WL 3058010
(S.D. Ohio May 31, 2016)……………………………………...14

*Parker v. 1-800 Bar None, a Financial Corp., Inc.*,
No. 01 C 4488, 2002 WL 215530
(N.D. Ill. Feb. 12, 2002)…..……………………………………15

*Plattner v. Edge Solutions, Inc.*,
422 F. Supp. 2d 969 (N.D. Ill. 2006)……………………………..12, 4

*Polacsek v. Debticated Consumer Counseling, Inc.*,
413 F. Supp. 2d 539 (D. Md. 2005)...……………………………14

*Rannis v. Recchia*,
380 Fed. Appx. 646 (9th Cir. 2001)………………………………..13

*Sanchez v. Pitre, Inc.*,
938 F. Supp. 2d 1199 (D.N.M. 2013)……………………………………14

*Slack v. Fair Isaac Corp.*,
390 F. Supp. 2d 906 (N.D. Cal. 2005)…………………………..….15

*Stout v. Freescore, LLC*,
743 F.3d 680 (9th Cir. 2014)………………………….…......……..13, 16

*U.S. v. Richie*,
342 F.3d 903 (9th Cir. 2003)………………………………..…….9

*White v. Financial Credit Corp.*,
No. 99 C 4023, 2001 WL 1665386
(N.D. Ill. Dec. 27, 2001)…………………………………………….15, 16

**STATUTES**

California Credit Services Organization Act of 1984, Cal. Civ. Code § 1789…………………………………………………………...……*passim*

Credit Repair Organization Act, 15 U.S.C. § 1679……………..……… *passim*

**OTHER AUTHORITIES**

Cal Civ. Code § 1789.11……………………………………..…..19

Cal Civ. Code § 1789.12……………………………………..…..19

Fed. R. Civ. P 9(b)……………………………………………….…….*passim*

Fed. R. Civ. P 12(b)(6)……………………………………………1, 9, 10

## I. PRELIMINARY STATEMENT

Plaintiffs' claims asserted pursuant to the Credit Repair Organization Act ("CROA"), 15 U.S.C. § 1679 *et seq.* and the California Credit Services Organization Act of 1984 ("CCSOA"), Cal. Civ. Code § 1789.10 *et seq.* are premised on the mistaken belief that Elite Financial Services, Inc. ("Elite Financial") is a "credit repair organization" as that term is defined in CROA and a "credit services organization" as that term is defined in CCSOA. Elite Financial is neither. As reflected in Plaintiffs' own allegations and the plain language of the contract incorporated by reference in those allegations, Elite Financial is a debt settlement company which does not provide services for the purpose of improving a consumer's credit. Nor does it seek to "repair" anything concerning its clients' credit. Rather, Elite Financial seeks to negotiate and settle its clients' outstanding debts with creditors—a process that Elite Financial expressly advises its clients may adversely impact their credit, not improve their credit. Thus, as a matter of law, Elite Financial is not subject to CROA or CCSOA.

But even if Plaintiffs did factually allege Elite Financial somehow provided (or represented they could provide) credit repair services (they cannot), Plaintiffs' fraud-based claims under § 1679b(a) and § 1789.13 fail for an additional reason: Plaintiffs' allegations fail to conform to the heightened pleading requirements of Fed. R. Civ. P 9(b). As a result, Plaintiff's Complaint fails to properly allege any untrue or misleading statements or deceptive or fraudulent conduct concerning the services of Elite Financial.

Accordingly, Plaintiffs' Complaint should be dismissed.

## II. PLAINTIFFS' ALLEGATIONS

Elite Financial is "committed to helping people live debt free nationwide" through its "debt relief program." (Compl., ¶ 5.) Plaintiffs wanted to "resolv[e] a number of debts" towards "the end of 2018" and "began searching for credit repair

and debt relief companies." (*Id.*, ¶ 8.) It is unknown what companies Plaintiffs searched, including how Plaintiff determined such unknown companies were credit repair companies, debt relief companies, or both. Notwithstanding, at an unalleged time, Plaintiffs "happened upon [Elite Financial]," "explained to [Elite Financial] the nature of the debts they wanted to enroll, and [Elite Financial] advised that they could enroll those debts in its program and would be able to settle those debts[.]" (Compl., ¶¶ 9-10.) Towards this end, Elite Financial "informed [Plaintiffs] that if they made certain monthly payments over a period of time, [Elite Financial] would be able to settle all of the debts they enrolled in the program." (Compl., ¶ 11.) Elite Financial provided Plaintiffs an *estimated* amount "representing the total payments necessary to settle enrolled debt[.]" (Compl., ¶ 34.) At an unalleged time, Plaintiffs "enrolled in Defendant's services and *signed a contract*" with Elite Financial because Plaintiffs "want[ed] to resolve their debt issues[.]" (Compl., ¶ 12.) At unalleged times, Elite Financial "would frequently enter into settlement agreements with [Plaintiffs'] creditors" to "settl[e] such debts[.]" (Compl., ¶¶ 17, 19.) In the course of the parties' relationship, Elite Financial represented to Plaintiffs that it would "work with [Plaintiffs] to resolve debts with problematic creditors" (Compl., ¶ 33); "that the BofA account was actively being negotiated" with the goal of "being settled" (Compl. ¶¶ 22, 45); that it "could not be sued as a result of its conduct" (Compl. ¶ 46); that it "does not provide credit repair services" (Compl. ¶ 47); "that it would assist Plaintiffs with problematic creditors" (Compl. ¶ 48); and that it would provide its services "upon a specific amount and length for Plaintiffs' monthly payments, yet…nevertheless requested further sums" (Compl. ¶ 44).

While Plaintiffs may now believe that "debt relief is inherently designed to improve a consumer's credit through the resolution of debts," (Compl., ¶ 47), Plaintiffs do not allege (because they cannot allege) any facts establishing Elite

Financial did or said anything to contribute to such belief, including any facts that rebut the express statements contained in the "contract" between Plaintiffs and Elite Financial (the "Agreement")[1] that rebut such a belief:

- "While participating in a debt settlement program, your credit score **may be negatively impacted**. Your credit report may reflect the fact that you have ceased paying your creditors." Agreement, p. 8 (emphasis added).

- "Depending upon individual circumstances, credit can be enhanced, adversely affected or not altered, but in any such case **the affect is beyond the control of this program**." *Id.*, p. 11 (emphasis added).

- "During the course of the program client's **credit rating may be negatively affected**." *Id.*, p. 12 (emphasis added).

- "Non payment of your debts under **our program may: [h]urt your credit rating and scores**." *Id.*, p. 16 (emphasis added).

*See* Declaration of Greg Morin, Agreement at **Exhibit A**. Instead, the Complaint simply concludes Elite Financial is a credit repair organization despite the foregoing factual allegations and contents of the Agreement to the contrary.

[1] Here, Plaintiffs refer to the "contract" on six (6) instances (Compl., ¶¶ 12, 13, 14, 36, 50, 56), reference the "acceptance" and "agree[ment]" of terms at least three (3) times (Compl., ¶¶ 24, 34, 44), and allege actions Plaintiffs or Elite Financial undertook pursuant to the Agreement on no less than eighteen (18) occasions (Compl., ¶¶ 15, 16, 17, 19, 20, 21, 22, 23, 24, 25, 27, 28, 32, 34, 35, 36, 44, 45). Indeed, the parties would not have entered into a relationship for debt settlement purposes in the first instance but for the Agreement. This cannot be reasonably disputed. Accordingly, the "contract" is incorporated by reference into the Complaint. *See U.S. v. Richie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document from the basis of plaintiff's claim. [internal citations omitted.] The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).").

## III. LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," and "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are insufficient. *Conder v. Home Sav. Of Am.*, No. CV 077051 AG (CTx), 2010 WL 2486765, at *2 (C.D. Cal. June 14, 2010); *see also Conner v. Winslow*, No. EDCV 07-218 AG (AN), 2009 WL 1549737, at *11 (C.D. Cal. June 1, 2009) ("courts are not bound to accept as true unreasonable inferences, unwarranted deduction of fact, legal conclusions couched as factual allegations"). And the Court "need not accept as true allegations contradicting documents that are referenced in the complaint[.]" *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

In resolving a 12(b)(6) motion to dismiss, "[t]he Supreme Court has set out a two-pronged approach for reviewing possible failure to state a claim. First, the reviewing court may identify those statements in a complaint that are actually conclusions, even if presented as factual allegations. Such conclusory statements (unlike proper factual allegations) are not entitled to a presumption of truth. In this context, it is the conclusory nature of the statements (rather than any fanciful or nonsensical nature) that disentitled them to the presumption of truth. Second, the reviewing court presumes the truth of any remaining well-pleaded factual allegations, and determines whether these factual allegations and reasonable inferences from them plausibly support a claim for relief." *Brown v. CMC*, No. CV 08-4587-VAP (SH), 2010 WL 2674499, at *3 (C.D. Cal. May 18, 2010) (internal quotations and citations omitted). "In sum, for a complaint to survive a motion to

dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Applying these well-settled principles, Plaintiffs fail to state a claim.

## IV. ARGUMENT

### A. Plaintiffs' Claims Under CROA Fail As A Matter of Law Because Elite Financial Neither Provides Credit Repair Services Nor Is A Credit Repair Organization

In enacting CROA, Congress made the following findings:

> (1) Consumers have a vital interest in establishing and maintaining their credit worthiness and credit standing in order to obtain and use credit. As a result, consumers who have experienced credit problems may seek assistance from **credit repair organizations which offer to improve the credit standing** of such customers.
>
> (2) Certain advertising and business practices of some companies **engaged in the business of credit repair services** have worked financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit matters.

15 U.S.C. § 1679(a) (emphasis added). In light of the foregoing, the purposes of CROA are:

> (1) [T]o ensure that prospective buyers of the **services of credit repair organizations** are provided with the information necessary to make an informed decision regarding the purchase of such services; and
>
> (2) [T]o protect the public from unfair or deceptive advertising and business practices by **credit repair organizations**.

15 U.S.C. § 1679(b) (emphasis added). CROA, as the title, congressional findings, and purposes elude, is directed towards credit repair organizations. A "credit repair organization," in turn, is statutorily defined to mean:

> Any person who used any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, **for the express or implied purposes of**—
>
> (i) **improving** any consumer's credit record, credit history, or credit rating; or
>
> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i)[.]

15 U.S.C. § 1679a(3)(A); *see also Plattner v. Edge Solutions, Inc.*, 422 F. Supp. 2d 969, 974 (N.D. Ill. 2006) (to be a credit repair organization, such organization must have (1) used any instrumentality of interstate commerce, or the mails, to (2) sell, provide, or perform (or represent hat it could) (3) in return for valuable consideration (4) services or advise about services designed to improve a consumer's credit record, credit history, or credit rating"). Further, "CROA makes a distinction between credit counseling services, which are prospective in nature, and credit repair services, which retrospectively offer false hopes of absolution for confessed past credit sins[.]" *Jackson v. Telegraph Chrysler Jeep, Inc.*, No. 07-cv-10489, 2009 WL 928224, at *6 (E.D. Mich. Mar. 31, 2009) (internal quotations and citations omitted). Thus, as a threshold matter, Plaintiffs must properly plead facts demonstrating Elite Financial is a credit repair organization in their attempts to hold Elite Financial liable for purported violations of CROA. *See, e.g., In re Experience Info. Solutions, Inc.*, No. CV-15-01212-PHX-GMS, 2017 WL 3574847, at *4 (D. Ariz. Aug. 17, 2017) ("it is clear from the text and structure of the CROA that the 'persons' whose conduct the CROA regulates are credit repair organizations or persons associated with credit repair organizations"); *Lopez v. ML # 3*, 607 F. Supp. 2d 1310, 1314 (N.D. Fla. 2009) ("it is clear that [CROA] applies only in the credit-repair context"); *Moret v. Select Portfolio Servicing*, No. 08-

61996-CIV, 2009 WL 1288062, at *2 (S.D. Fla. May 6, 2009) ("The Court agrees with the Defendants that CROA was not intended to apply where no credit repair organization, as defined by the Act, was involved."); *Nixon v. Alan Vester Auto Grp, Inc.*, NO. 07-cv-839, 2008 WL 4544369, at *7 (M.D.N.C. Oct. 8, 2008) ("Congress' focus in enacting the CROA was on the credit repair industry, and specifically for regulation of credit repair organizations….Thus, only a credit repair organization or a 'person' associated with a credit repair organization can violate CROA."); *Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2001) (defendant was required to comply with CROA because he met the statute's definition of a credit repair organization).

In interpreting CROA, the Court first looks to its plain language. *Stout v. Freescore, LLC*, 743 F.3d 680, 684 (9th Cir. 2014). "When the plain meaning of a statutory provision is unambiguous, that meaning is controlling." *Id.* Here, the plain language of CROA establishes that debt settlement companies that neither provide nor represent that they can provide services for the express or implied purposes of improving or assisting with the improvement of any consumer's credit are not credit repair organizations subject to CROA. Elite Financial is an example of such a debt settlement company. This is so as, pursuant to Plaintiffs' allegations and the contents of the Agreement, Elite Financial does not offer (or represents that it offers) a service for the "*purpose of improving* a consumer's credit[.]" To the contrary, its prospective services may *adversely impact a consumer's credit* as it repeatedly advised Plaintiffs. *See* Agreement, pp. 8 ("While participating in a debt settlement program, **your credit score may be negatively impacted**. Your credit report may reflect the fact that you have ceased paying your creditors."), 11 ("Depending upon individual circumstances, credit can be enhanced, adversely affected or not altered, but in any such case **the affect is beyond the control of this program**."), 12 ("During the course of the program client's **credit rating may**

**be negatively affected**."), 16 ("Non payment of your debts under our program **may: [h]urt your credit rating and scores**.") (emphasis added).

"Whether a company is a credit repair organization under the CROA depends on the representations made." *Payton v. Nationwide Debt Direct*, No. 1:15-cv-742, 2016 WL 3058010, at *4 (S.D. Ohio May 31, 2016) (quoting *Plattner*, 422 F. Supp. 2d at 974); *see also Polacsek v. Debticated Consumer Counseling, Inc.*, 413 F. Supp. 2d 539, 546 (D. Md. 2005) (stating that a credit counseling agency may be covered by the CROA "[d]epending upon the allegations of the Complaint"). Elite Financial offers services for the purpose of negotiating and settling its clients' debts regardless of the impact such services have on the clients' respective credit. *See, generally,* Agreement. Plaintiffs do not allege (because they cannot allege) any facts—as opposed to mere conclusions—establishing that the purpose of Elite Financial's services would improve, expressly or impliedly, Plaintiffs' credit, let alone that Elite Financial made any representations to this end. Nor could they as the Agreement belies any such notion. *See Lazy Y Ranch Ltd.*, 546 F.3d at 588 (the court "need not accept as true allegations contradicting documents that are referenced in the complaint"). Accordingly, Plaintiffs' CROA claims should be dismissed for failure to state a claim. *See, e.g., Payton*, 2016 WL 3058010 (dismissing CROA claims because plaintiff "has not pleaded facts sufficient to establish either that [defendant debt settlement company] is a credit repair organization or that it provides credit repair services"); *Sanchez v. Pitre, Inc.*, 938 F. Supp. 2d 1199, 1201-2 (D.N.M. 2013) (dismissing CROA claims because plaintiff "does not allege [defendant] was a credit repair organization, or held itself out as offering any form of credit repair services. Absent such allegations, Plaintiff's claim under the CROA should be dismissed.").

**B. Plaintiffs' Claims Pursuant to 15 U.S.C. § 1679(a)(3) and (4) Should Be Dismissed For Failure To Allege Any Actionable False Statements or Fraudulent Conduct Regarding the Services of Elite Financial**

CROA does not apply to Elite Financial because it is not a credit repair organization. While the Court need go no further in its analysis, the purported claims under § 1679b(a)(3) and (4) fail for the additional reason that Plaintiffs do not properly allege any false or misleading statements or deceptive or fraudulent conduct on behalf of Elite Financial.

**1. Plaintiffs' § 1679b(a)(3) and (4) claims must satisfy Fed. R. Civ. P. 9(b)**

Plaintiffs' CROA claims based on §1679b(a)(3) and (4) must conform to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See, e.g., Slack v. Fair Isaac Corp.*, 390 F. Supp. 2d 906, 911-12 (N.D. Cal. 2005); *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, No. 01 C 4488, 2002 WL 215530, at *6 (N.D. Ill. Feb. 12, 2002). "While it may be true that the elements of fraud need not be proven to establish liability under" CROA, a § 1697b(a)(3) and (4) claim "sounds in fraud" thereby triggering the heightened pleading standard of Rule 9(b). *Slack*, 390 F. Supp. 2d at 911-12.

Accordingly, Plaintiffs must allege "precisely the time, place, and nature of the misleading statements, misrepresentations, or specific acts of fraud" along with "an explanation as to why the statement or omission complained of was false and misleading." *Id.* at 912. The Complaint fails to meet this heightened pleading standard.

**2. Elite Financial does not make any untrue or misleading statements regarding its services nor does it engage in practices that constitute fraud or deception**

Courts apply the "objective standard of an unsophisticated debtor" when analyzing §1679b(a)(3) and (4) claims. *White v. Financial Credit Corp.*, No. 99 C

4023, 2001 WL 1665386, at *4, 6 (N.D. Ill. Dec. 27, 2001). "According to our unsophisticated debtor standard, a statement will not be confusing or misleading unless a significant fraction of the population would be similarly misled." *Id.* at 4. In interpreting such supposed misleading or false statements or fraudulent or deceptive conduct, the Court must look to the "overall net impression" of the statements or conduct to determine what message may reasonably be ascribed to such statements or conduct. *Stout*, 743 F.3d at 685.

Applying these principles, it is clear that Plaintiff's Complaint does not sufficiently allege Elite Financial made any untrue or misleading statements or fraudulent or deceptive conduct. As stated above, Plaintiffs allege the following in support of their §1679b(a)(3) and (4) claims:

- that Elite Financial would "work with [Plaintiffs] to resolve debts with problematic creditors" (Compl., ¶ 33);
- "that the BofA account was being settled" (Compl. ¶ 45);
- that Elite Financial "could not be sued as a result of its conduct" (Compl. ¶ 46);
- "that [Elite Financial] does not provide credit repair services" (Compl. ¶ 47);
- "that [Elite Financial] would assist Plaintiffs with problematic creditors" (Compl. ¶ 48); and
- that Elite Financial would provide its services "upon a specific amount and length for Plaintiffs' monthly payments, yet…nevertheless requested further sums" (Compl. ¶ 44).

To the extent any of the foregoing "representations" even concern "the services of [a] credit repair organization" as required by CROA, *see* 15 U.S.C. § 1679b(a)(3) and (4), by Plaintiffs' own admission, Elite Financial was settling Plaintiffs debts with creditors. *See, e.g.*, Compl. ¶¶ 17 ("Defendant would

frequently enter into settlement agreement with their creditors"), 19 ("Defendant was settling such debts"). Thus, it was not a false or misleading statement when Elite Financial allegedly represented that it would "work with [Plaintiffs] to resolve debts with problematic creditors" or that it "would assist Plaintiffs with problematic creditors." (Compl. ¶¶ 33 and 48.)

Plaintiffs' attempts to allege Elite Financial misrepresented the status of the Bank of America account and the amount and length of Plaintiffs' monthly payments to Elite Financial, (Compl. ¶¶ 44 and 45), fare no better. Those alleged misrepresentations are belied by the contents of the Complaint, as a whole, and the Agreement. Specifically, Elite Financial informed Plaintiffs "that the BofA account was being taken care of and *was actively being negotiated*." (Compl., ¶ 22.) This was and is a true statement, and Plaintiffs do not allege otherwise (because they cannot allege). Rather, Plaintiffs' Complaint reveals their dissatisfaction resulting from Bank of America being unwilling to settle Plaintiffs debt. But, the Agreement expressly advised Plaintiffs that, *inter alia*, "[Elite Financial] cannot guarantee that your debt will settle for any particular percentage within any particular time period, or that we will be able to settle any of your accounts at less than full value….We cannot guarantee the specific results of your program." Agreement, p. 8; *see also* Agreement, pp. 10 ("[Elite Financial] cannot force negotiations or settlements with creditors"); 11 ("Creditor willingness to negotiate varies. Some creditors are more difficult and may result in higher settlement amounts and alternate settlement methods. Client understands some creditors may refuse to negotiate"). As it also advised Plaintiff that the amount and length of payments was an "estimate" that could not be guaranteed. *See* Agreement, pp. 11 ("[Elite Financial] will provide the client with an estimated monthly payment and term of program based on an estimated 50% savings off of you total debt enrolled."), 12 ("[Elite Financial] does not guarantee the results regarding the estimated quote. [Elite Financial] has given

these estimates, though they are limited by their knowledge at the time of the estimated quote.”).

The remaining “representations” (i.e., that Elite Financial does not provide credit repair services and could not be sued by Plaintiffs) appear to be nothing more than an unalleged individual’s recitation of the terms of the Agreement. *See* Agreement, pp. 9 (“Elite Financial Services is a debt settlement company. We do NOT provide the following services: credit counseling…credit repair”), 12 (“In the event legal action is commenced by a credit against client, client agrees to immediately notify [Elite Financial] and hold [Elite Financial] harmless from any such legal action by creditors”). The only thing that is false is Plaintiffs’ tortured interpretation of clear statements to the contrary as the “overall net impression” of Elite Financial’s alleged representations when juxtaposed to the contents of the Agreement reveal Elite Financial represented that it would attempt to settle Plaintiffs debts for an estimated amount. That is precisely what it did as revealed by the Complaint. Unfortunately, one of Plaintiffs’ creditors was unwilling to so negotiate and settle.

**C. Plaintiffs’ Claims Under CCSOA Fail As A Matter of Law Because Elite Financial Neither Provides Credit Repair Services Nor Is A Credit Services Organization**

Similar to CROA, the California Legislature made the following findings:

> The ability to obtain and use credit has become of great importance to consumers, who a vital interest in establishing and maintaining their credit worthiness and credit standing. As a result, consumers who have experienced credit problems may seek assistance from **credit services organizations which offer to obtain credit or improve the credit standing** of such consumers.
>
> Certain advertising and business practices of some **credit services organizations** have worked financial hardship upon the people of this

> state, often those who are of limited economic means and inexperienced in credit matters. **Credit service organizations** have significant impact upon the economy and well-being of this state and its people.

Cal Civ. Code § 1789.11(a) (emphasis added). In light of the foregoing, the purposes of CCSOA are:

> [T]o provide prospective buyers of **services of credit services organizations** with the information necessary to make an intelligent decision regarding the purchase of those services and to protect the public from unfair or deceptive advertising and business practices.

Cal Civ. Code § 1789.11(b) (emphasis added). CCSOA, as the title, congressional findings, and purposes elude, is directed towards credit services organizations. A "credit service organization," in turn, is statutorily defined to mean:

> A person who, with respect to the extension of credit by others, sells, provides, or performs, or represents that he or she can or will sell, provide or perform, any of the following services, in return for the payment of money or other valuable consideration:
>
> (1) Improving a buyer's credit record, history, or rating.
>
> (2) Obtaining a loan or other extension of credit for a buyer.
>
> (3) Providing advice or assistance to a buyer with regard to either paragraph (1) or (2).

Cal. Civ. Code § 1789.12(a). And similar to the above CROA analysis, Plaintiff's CCSOA allegations "sound in fraud" and, as such, must be pled with particularity. *See Lazar v. Superior Court* (1996) 12 Cal. 4th 631, 645.

Plaintiffs fail to factually allege Elite Financial is a credit service organization under CCSOA for the same reasons Plaintiffs fail to factually allege Elite Financial is a credit repair organization under CROA as set forth in Section

IV(A), *supra*, which section, for purposes of brevity, is incorporated as if fully set forth herein. As a result, Plaintiffs' CCSOA claims should be dismissed.

**V. CONCLUSION**

For the foregoing reasons, Elite Financial respectfully requests that this Court dismiss Plaintiffs' Complaint for failure to state a claim.

Date: March 24, 2022

GREENSPOON MARDER LLP

By: *<u>/s/ Germain D. Labat</u>*
Germain D. Labat